[S.F. No. 22754. In Bank. Nov. 10, 1970.]

JOHN SCHWEIGER, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JOHN B. BONDS, Real Party in Interest.

508

**COUNSEL**

Thomas L. Fike, Robert Goldstein, Allan David Heskin, Henry Hewitt and Myron Moskovitz for Petitioner.

Terry J. Hatter, Jr., Paul F. Cohen, Paul L. McKaskle, William T. Rintala, Michael Henry Shapiro and Abby Soven as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Koford, McLeod & Koford and George M. McLeod for Real Party in Interest.

**OPINION**

**MOSK, J.**—Petitioner is a tenant in a 19-unit apartment building owned by real party in interest, John Bonds. He has occupied the apartment for

four years by virtue of a month-to-month oral agreement with Bonds. Initially, the rent paid by petitioner was $60 per month, but by February 1969 it had been gradually increased to $75 per month.

On June 16, 1969, petitioner sent a letter to Bonds requesting, pursuant to Civil Code sections 1941 and 1942,[1] that Bonds repair two longstanding dilapidations of petitioner's apartment—two broken windows and a broken back door that could not be locked. Bonds responded with a letter on July 1, 1969, informing petitioner that his rent would be increased from $75 per month to $125 per month as of August 1. At the time petitioner received this letter, the average rental for a unit in Bonds' apartment building was between $70 and $75 per month, and no apartment in the building rented for more than $90 per month. Sometime during July, Bonds replaced the two broken windows, but the back door remained unrepaired.

On August 1, petitioner paid rent to Bonds of only $60—$75 rent less $15 estimated for repairing the back door. Petitioner contended that the imposed rent increase was unlawful retaliation against him for asserting his statutory rights under Civil Code sections 1941 and 1942. He subsequently repaired the back door at an actual cost of $35.45.

Bonds' response was predictable and immediate. After serving upon petitioner a three-day notice which demanded payment of an additional $65 rent for the month of August, he commenced an action in unlawful detainer in the Alameda County small claims court. Judgment was rendered to plaintiff for restitution of the premises and $29.55 in cash, representing $125 rent due, less $60 paid and $35.45 for repairs.

Petitioner appealed to the Alameda County Superior Court which held a trial de novo. Judgment was again rendered in favor of the landlord for restitution of the premises and $29.55 plus costs. Although the court expressed agreement with petitioner that the landlord's rent increase and eviction action had been intended as retaliation against petitioner for as-

---

[1] Section 1941 provides as follows: "The lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put it into a condition fit for such occupation, and repair all subsequent dilapidations thereof, which render it untenantable, except such as are mentioned in section nineteen hundred and twenty-nine [dilapidations caused by tenant's negligence]."

Section 1942 states: "If within a reasonable time after notice to the lessor, of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself, where the cost of such repairs does not require an expenditure greater than one month's rent of the premises, and deduct the expenses of such repairs from the rent, or the lessee may vacate the premises, in which case he shall be discharged from further payment of rent, or performance of other conditions."

Section 1942 was amended and sections 1941.1, 1941.2, 1942.1, and 1942.5 were added to the Civil Code by California Statutes 1970, chapter 1280. However, the amendment and new sections have no application to agreements entered into prior to January 1, 1971.

serting his statutory rights, the court rejected, as a matter of law, petitioner's defense that such retaliatory evictions violated public policy. In essence, the court concluded that Civil Code sections 1941 and 1942 impose no limit on the power of landlords to raise rents and evict tenants in retaliation for the exercise by the tenants of their rights under those sections. Nonetheless, the court certified the case to the Court of Appeal to determine a question of law of statewide importance: may a tenant defend an unlawful detainer action on the ground that his landlord increased the rents and commenced the eviction action in retaliation against him because he made a demand for repairs pursuant to Civil Code sections 1941 and 1942?

Despite the certification, the Court of Appeal refused to transfer the case. Petitioner now seeks a writ of mandate to compel the superior court to hear his defense based on the retaliatory motivation of his landlord. As will be developed, we conclude that the writ should issue.

This case poses a problem of statutory construction necessitating the resolution of an apparent conflict between California Code sections affecting the rights of landlords and tenants. On the one hand, Civil Code section 1942 grants a tenant the right to demand that his landlord repair dilapidations in his apartment unit and, if the landlord neglects to do so, the tenant may make the repairs himself, where the cost does not exceed one month's rent, and deduct the expense of the repairs from the rent. On the other, Code of Civil Procedure section 1161[2] implies the unrestricted power of a landlord under a month-to-month tenancy to raise the rent for his property to any level, however exorbitant, and to evict tenants unable or unwilling to pay. The two sections become incompatible when it is alleged, as petitioner alleges here, that the landlord raised the tenant's rent and instituted unlawful detainer proceedings for his failure to pay solely because he asserted his rights under section 1942.[3] We must decide whether such an allegation constitutes a defense to an unlawful detainer action and, if so, whether the superior court abused its discretion in refusing to hear the defense.

---

[2]Code of Civil Procedure section 1161 provides in part as follows: "A tenant of real property, for a term less than life, . . . is guilty of unlawful detainer: . . . When he continues in possession, in person or by subtenant, without the permission of his landlord, . . . after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him and if there is a subtenant in actual occupation of the premises, also upon such subtenant."

[3]An identical conflict would exist if a landlord sought to terminate a tenancy under Civil Code section 1946, instead of Code of Civil Procedure section 1161, in retaliation for the tenant's exercise of statutory rights. Section 1946 authorizes either party to a month-to-month tenancy to terminate on 30 days' written notice.

Few appellate courts in the United States have considered the availability of a defense against retaliatory eviction. As in many aspects of landlord-tenant law, appellate precedent is sparse because of the economic factor: the tenants involved are often unable to afford appeals or are without direct appellate access in the cases arising in small claims courts.

Nevertheless, some instructive judicial authority exists on the subject of retaliatory eviction. The leading contemporary case is *Edwards* v. *Habib* (1968) 397 F.2d 687 [130 App.D.C. 126], cert. den. (1969) 393 U.S. 1016 [21 L.Ed.2d 560, 89 S.Ct. 618]. In that matter, a tenant complained to District of Columbia housing officials about sanitation and housing code violations existing in her apartment, which her landlord had refused to repair, and the landlord responded with a notice to vacate the premises and obtained a default judgment for possession. The tenant then reopened the case and interjected as a defense that the notice to quit was served in retaliation for her complaints to the housing authorities. The defense was rejected as irrelevant at trial and on appeal to the district court. The circuit court reversed, ruling: "But while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted.

"The housing and sanitary codes . . . indicate a strong and pervasive congressional concern to secure for the city's slum dwellers decent, or at least safe and sanitary, places to live. Effective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations. . . . To permit retaliatory evictions . . . would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing in Washington. . . . There can be no doubt that the slum dweller, even though his home be marred by housing code violations, will pause long before he complains of them if he fears eviction as a consequence. Hence an eviction under the circumstances of this case would not only punish appellant for making a complaint which she had a constitutional right to make, . . . but also would stand as a warning to others that they dare not be so bold, a result which, from the authorization of the housing code, we think Congress affirmatively sought to avoid.

"The notion that the effectiveness of remedial legislation will be inhibited if those reporting violations of it can legally be intimidated is so fundamental that a presumption against the legality of such intimidation can be inferred as inherent in the legislation even if it is not expressed in the statute itself. . . . [W]e . . . have the task of reconciling and har-

monizing two federal statutes so as to best effectuate the purposes of each. The proper balance can only be struck by interpreting [the District of Columbia eviction statutes] as inapplicable where the court's aid is invoked to effect an eviction in retaliation for reporting housing code violations." (Fns. omitted.) (*Id.* at pp. 699-702.)

While District of Columbia circuit opinions are not controlling precedent in this court, the compulsion of persuasive reasoning is not circumscribed by jurisdictional boundaries. The *Edwards* court was faced with the problem of reconciling the apparently unlimited power of landlords to evict with the fundamental public policy underlying the housing and sanitation codes. The court held that landlords could not exercise their rights under the eviction statutes to retaliate against tenants invoking their rights under the housing and sanitation codes. Except for superficial distinctions our problem is identical. If we fail to recognize a reasonable limitation on the punitive power of landlords to increase rents and evict tenants, the salutary purposes sought to be achieved by the Legislature in enacting Civil Code sections 1941 and 1942 will be frustrated. If we deny tenants a defense against retaliatory eviction in unlawful detainer actions, we lend the exercise of the judicial process to aid landlords in punishing those tenants with the audacity to exercise their statutory rights. Thus sound statutory construction here, as *Edwards* held in comparable circumstances, requires that we reconcile sections 1942 and 1161 by recognizing existence of a defense in unlawful detainer actions when the landlord's motive is retaliation for the exercise of statutory rights under section 1942. Adoption of the alternative course would suggest a devious legislative intent to render section 1942 ineffective as a protective measure.

Real party in interest Bonds urges us to distinguish *Edwards* on the ground that the policies underlying housing codes and sections 1941 and 1942 are not identical. Even if it be conceded that the protective policies inspiring housing codes are more pervasive than those underlying section 1942, the rationale of *Edwards* appears singularly appropriate to general statutory self-help remedies like section 1942. Whatever salutary legislative purpose induced the passage of section 1942, it cannot be achieved if tenants exercising the rights granted by the section may be punished with judicial approbation. Furthermore, the frustrating effect of landlord retaliation on the vitality of section 1942 is likely to be greater than it would be on the enforcement of housing codes, since section 1942 depends for its effectiveness exclusively on tenant initiative, as distinguished from governmental action.

In recognizing a defense against retaliatory eviction, we do not pursue a wholly uncharted course. An equitable limitation on the punitive power

of landlords to evict their tenants was recognized in *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309]. In that case the Court of Appeal held that a tenant defending an unlawful detainer action was entitled to prove that he was being evicted solely because of his race and that such proof would bar his eviction, the ratio decidendi being that judicial enforcement of a discriminatory eviction would be "state action" in violation of equal protection. In reaching its result, the court explained the necessity of recognizing equitable defenses in unlawful detainer actions: "Although defendant bases his defense upon constitutional propositions and statutes seeking to insure equal protection under the law, such defense nevertheless has its foundation in equitable principles.

"The purpose of the general rule, that neither a counterclaim nor a cross complaint is admissible in an action of unlawful detainer, is to prevent tenants who have violated the covenants of their leases from frustrating the ordinary and summary remedy provided by statute for the restitution of the premises. . . . However, as the court stated in *McCue* v. *Bradbury,* 149 Cal. 108, at p. 113 [84 P. 993], '. . . equity will refuse to enforce a forfeiture at the instance of one who has obtained the strictly legal right to it by fraud, deceit, or any form of oppressive practice; and, upon the other hand, will relieve the innocent when such a forfeiture so secured is sought to be enforced.'

" 'Equitable principles apply in this state also where a forfeiture is sought in an action in unlawful detainer.' [Citation.] The court in *Knight* v. *Black,* 19 Cal.App. 518, 525-526 [126 P. 512], speaking of the remedy of unlawful detainer, said, '. . . although the remedy provided by law . . . is summary in principle and process, nevertheless the very nature of the action, involving, as it does, a forfeiture, appeals to the equity side of the court and in turn requires "a full examination of all of the equities involved to the end that exact justice be done." '

"In this case defendant does not raise a cross complaint or counterclaim, nor does he attempt to litigate the question of title. What he seeks does not violate any of the exclusionary rules with regard to unlawful detainer actions. His defense is a constitutional defense based upon a broad equitable principle. Certainly the interest in preserving the summary nature of an action cannot outweigh the interest of doing substantial justice. To hold the preservation of the summary proceeding of paramount importance would be analogous to the 'tail wagging the dog.' " (204 Cal.App.2d at pp. 248-249.)

Undeniably, as the real party in interest insists, *Abstract Investment* is distinguishable on its facts: it recognized a constitutional defense to a summary eviction, rather than a defense based on statutory rights. Nevertheless,

it is difficult to rationalize a result in which a tenant's statutory rights are deemed so inconsequential as to permit him to be evicted because he opts for their exercise. ■ The same interest in "substantial justice" protected in *Abstract Investment* demands that a landlord be prevented from invoking judicial assistance to punish a tenant by eviction because the tenant sought to exercise rights expressly granted by statute. ■ And the right not to be deprived in court of home and shelter because of the exercise of statutory rights is a "broad equitable principle" as deserving of protection as the right to equal protection under the law. Thus, the sound reasoning of *Abstract Investment,* which imposes an equitable limitation on the punitive power of landlords to evict their tenants, applies with persuasive force to the instant action to prohibit eviction in retaliation against the exercise of statutory rights.

In related areas of jurisprudence, our courts have not hesitated to prohibit retaliatory exercises of broad private powers when they interfere with public policy. In *Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal. App.2d 793 [13 Cal.Rptr. 769], an employer discharged his employees because they had applied for union membership. The employees sued for damages. The Court of Appeal held that, although the contracts of employment were at will and generally could be terminated by either party, the rule was "modified by an exception that prevents a contract of employment at will from being terminated where the reason for termination is one which violates established public policy." (*Id.* at p. 796.) Thus, the court concluded that the broad power of the employer to terminate employment contracts at will under Labor Code section 2922 was limited by the public policy expressed in Labor Code sections 922 and 923, which gave employees an unfettered right to organize. "It would be a hollow protection indeed that would allow employees to organize and would then permit employers to discharge them for that very reason, unless such protection would afford to the employees the right to recover for this wrongful act." (*Id.* at p. 798.)

In the earlier case of *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], an employee was discharged after he refused to testify falsely before an Assembly committee, and the Court of Appeal reversed a judgment for the employer in the employee's damage action. "It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute. . . . [I]n order to more fully effectuate the state's declared policy against perjury,

the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury." (*Id.* at pp. 188-189; see also *United States* v. *Bruce* (5th Cir. 1965) 353 F.2d 474.)

Both *Glenn* and *Petermann* persuasively instruct us that one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy. ■ Clearly, sections 1941 and 1942 express the policy of this state that landlords in the interest of public health and safety have the duty to maintain leased premises in habitable condition and that tenants have the right, after notice to the landlord, to repair dilapidations and deduct the cost of the repairs from the rent. The policy expressed in these sections cannot be effectuated if landlords may evict tenants who invoke the provisions of the statute. Courts would be withholding with one hand what the Legislature has granted with the other if they order evictions instituted in retaliation against the exercise of statutory rights.

Further support for recognition of a defense against retaliatory eviction may be found in a growing body of legislative action and critical legal commentary. Most notably, in 1969, a tentative draft of the Model Residential Landlord-Tenant Code was published under the auspices of the American Bar Foundation. Section 2-407 of the Model Code absolutely prohibits rent increases and evictions within six months after a tenant has complained of housing code violations or requested authorized repairs, unless the landlord can establish a nonretaliatory motive. Violation of the section subjects a landlord to a treble damage action. The commentary to the section makes evident that the drafters of the code had in mind considerations similar to those expressed in *Edwards, Abstract Investment, Glenn,* and *Petermann:* "Since the express public policy is to enforce building codes and other laws, . . . which govern the construction, maintenance, and use of residential dwellings, one must look askance on a majority rule which allows a landlord to deter a tenant from assisting the enforcement by means of complaint. This section represents an attempt to serve this public policy and prevent such landlord interference."[4]

---

[4]In section 1942.5, added to the Civil Code operative January 1, 1971, the California Legislature recognizes a defense against retaliatory evictions in certain circumstances. Also, Illinois, New Jersey, and Rhode Island have enacted legislation to prevent retaliatory evictions. (See Ill. Ann. Stats., ch. 80, § 71 (1966); N.J. Stats. Ann., § 2A:170-92.1 (Supp. 1969); R.I. Gen. Laws, § 34-20-10 (1968).)

Legal commentators who have taken a forthright policy position against retaliatory eviction include Loeb, *The Low-Income Tenant in California: A Study in Frustration* (1970) 21 Hastings L.J. 287; Note, *California Unlawful Detainer Procedure—A Proposed Legislative Change* (1970) 21 Hastings L.J. 491, 512; Judge J. Skelly Wright. *Poverty, Minorities, And Respect For Law* (1970) Duke L.J. 425, 429; Note, *Landlord And Tenant—Retaliatory Evictions* (1967) 3 Harv. Civ. Rights-

■ The foregoing authorities persuade us to recognize in unlawful detainer actions a defense that the eviction is sought in retaliation for the exercise of statutory rights by the tenant. ■ If a tenant factually establishes the retaliatory motive of his landlord in instituting a rent increase and/or eviction action, such proof should bar eviction. Of course, we do not imply that a tenant who proves a retaliatory purpose is entitled to remain in possession in perpetuity. As the court stated in *Edwards:* "If this illegal purpose is dissipated, the landlord can, in the absence of legislation or a binding contract, evict his tenants or raise their rents for economic or other legitimate reasons, or even for no reason at all. The question of permissible or impermissible purpose is one of fact for the court or jury. . . ." (Fns. omitted.) (*Edwards* v. *Habib* (1968) *supra*, 397 F.2d 687, 702.)

Finally, we must decide whether the petitioner before us is entitled to relief by way of an extraordinary writ. ■ The foregoing analysis establishes that the superior court committed reversible error in refusing to recognize petitioner's defense, but error alone, as distinguished from an abuse of discretion or other extraordinary circumstances, does not merit relief by writ. In the precise posture of this case, there is little authority to guide us.

■ It is clear that petitioner has no adequate remedy by way of appeal to correct the error of the superior court. His only avenue of appellate relief was exhausted when the Court of Appeal refused to transfer the case despite certification by the superior court.[5]

In *Carter* v. *Superior Court* (1956) 142 Cal.App.2d 350, 359 [298 P.2d 598], a writ of mandate was issued to compel the respondent superior court to entertain a crucial defense it had erroneously stricken from the defendant's pleadings. The court found that the excluded plea, if proven,

---

Civ. Lib. L.Rev. 193; Note, *Retaliatory Eviction—Is California Lagging Behind?* (1967) 18 Hastings L.J. 700; Schoshinski, *Remedies Of The Indigent Tenant: Proposal For Change* (1966) 54 Geo. L.J. 519, 541-552.

[5]The Courts of Appeal have uncontrolled discretion in deciding whether to transfer cases under Code of Civil Procedure section 911. Rule 28(b) of the Rules of Court provides as follows: "A party seeking a hearing [before the Supreme Court] must serve and file a petition therefor within 10 days after the decision of the Court of Appeal becomes final as to that court, *except that a petition may not be filed after denial of a transfer to a Court of Appeal after certification in a case within the original jurisdiction of a municipal or justice court.*" (Italics added.)

Code of Civil Procedure section 911 provides in part as follows: "A court of appeal may order any case on appeal within the original jurisdiction of the municipal and justice courts in its district transferred to it for hearing and decision as provided by rules of the Judicial Council when the superior court certifies, or the court of appeal determines, that such transfer appears necessary to secure uniformity of decision or to settle important questions of law."

would have compelled a judgment for defendant and therefore the superior court abused its discretion in striking the defense. Similarly, in *Nelson* v. *Superior Court* (1950) 97 Cal.App.2d 78 [217 P.2d 119], the lower court was directed to file a cross-complaint in an opinion concluding (at p. 80): "Mandamus is to be used to compel a court to give a full hearing to the case before it, not as to how it should rule with respect to the merits of the case." To the same effect is *Marr* v. *Superior Court* (1939) 30 Cal. App.2d 275, 279 [86 P.2d 141]. (Cf. *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 770 [197 P.2d 739]; *Miller* v. *Municipal Court* (1943) 22 Cal.2d 818, 851-852 [142 P.2d 297].)

We recognize that the foregoing authorities dealt primarily with refusal of trial courts to accept pleadings offered by one of the litigants. The effect was to deny one party a full hearing on the merits of his cause. In the instant case, the petitioner was denied a crucial defense by the superior court at the trial rather than at a prior pleading stage, but the result was identical to that which would have followed a pleading rejection: petitioner was deprived of his only opportunity to fully litigate the unlawful detainer action on its merits. This constituted an abuse of discretion.

The stay of proceedings heretofore ordered on May 28, 1970, is terminated. Let a peremptory writ of mandate issue.

Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**WRIGHT, C. J.**—I dissent. Prior to today's decision, a landlord in a month-to-month tenancy could increase the rent or terminate the tenancy for any reason or for no reason at all.[1] (See *Housing Authority* v. *Cordova* (1955) 130 Cal.App.2d Supp. 883 [279 P.2d 215].) In holding that it shall be a defense to an action for unlawful detainer that the landlord raised the rent or brought the eviction action in retaliation for the exercise of the tenant's rights under Civil Code section 1942, this court substantially alters this rule. Although I deplore the type of action taken by the landlord in the instant case, I believe that the problems of retaliatory rent increases and evictions should be left to the Legislature since it has been assigned the function of deciding important questions of public policy and is a more appropriate body for considering the respective interests of landlords and tenants.

Moreover, as one commentator has pointed out, "judicial prohibition of

[1]As the majority opinion indicates, an exception to this rule was set forth in *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309], where the court held that a tenant could assert as a defense in an unlawful detainer action that he was being evicted solely because of his race.

retaliatory evictions [and rent increases] raises a host of problems which it may be difficult for the courts to resolve consistently." (82 Harv.L.Rev. 932.) For example, what will a landlord who is found to have raised the rent in retaliation for filing a notice under Civil Code section 1942 be required to show in order to prove that his illegal motive has "dissipated?" If he seeks to raise the rent within a month or two of a finding of retaliation, will a claim that he merely wants to increase his return from the dwelling be sufficient, or will he have to demonstrate that there is some other economic justification, such as higher taxes, for the action?

Finally, and most importantly, the Legislature has provided a statutory solution to the problems of retaliatory evictions and rent increases through the adoption of section 1942.5 of the Civil Code. This section is part of comprehensive legislation defining a lessor's obligation to provide a tenantable dwelling and a lessee's remedies if such obligation is not met.[2] Although this legislation does not apply to the present case, I am of the opinion that it would be wiser for this court to address itself to the application of this legislation in future cases rather than create by judicial decree a new defense to actions for unlawful detainer. The creation of such a defense is the proper function of the Legislature, and it has seen fit to take appropriate action.

McComb, J., concurred.

---

[2]Section 1941.1 has been added to the Civil Code to specify the conditions under which a dwelling shall be deemed untenantable. Section 1941.2 provides for certain affirmative obligations in relationship to the dwelling which must be met by the lessee. Section 1942 has been amended to provide that the remedies contained in that section shall not be available to a lessee more than once in any 12-month period and that a lessee shall be presumed to have acted after a reasonable time if he acts to repair and deduct after the thirtieth day following the notice required by the section.

Section 1942.1 has been added to provide that any agreement by a lessee waiving or modifying his rights under sections 1941 and 1942 shall be void as to any condition which renders the dwelling untenantable and that a lessor and lessee may, by an agreement in writing, provide for arbitration of any controversy relating to a condition of the dwelling claimed to make it untenantable.

Section 1942.5 specifies the conditions under which a lessor may not recover possession, cause the lessee to quit involuntarily, increase the rent, or decrease any services in retaliation for the exercise of a lessee's rights under sections 1941-1942 or because the lessee complained to an appropriate governmental agency concerning the tenantability of the dwelling. A lessee may not invoke the provisions of the section more than once in a 12-month period. However, any waiver by a lessee of his rights under the section is declared void as against public policy.