## ROBINSON v. ROUNDTREE.

No. 75-1652-CC.

County Court, Palm Beach County, Civil Division.

January 15, 1976.

I. C. Smith, West Palm Beach, for the plaintiff.

James A. Cassidy, West Palm Beach, for the defendant.

DANIEL T. K. HURLEY, Judge.

*Order granting in part and denying in part defendant's motion to transfer the cause, and denying plaintiff's motion to strike defendant's affirmative defenses and counterclaim and setting the cause*

*for trial:* This cause came on for hearing before the court upon defendant's motion to transfer the cause to the circuit court, at which time the plaintiff orally moved the court to strike the defendant's affirmative defenses and counterclaim.

Plaintiff contends that the defense of retaliatory eviction may be raised in a summary proceeding only when the landlord is suing for possession based upon non-payment of rent or when he is seeking to recover unpaid rent. When, as in the case at bar, the tenant receives timely notice to quit and thereafter fails to vacate the premises, it is the plaintiff's contention that a defense of retaliatory eviction can be raised only in a separate action filed in the circuit court. Plaintiff relies upon the wording of Florida Statute 83.60 and upon the fact that the following section was stricken from the original draft of the Florida Residential Landlord and Tenant Act, Florida Statute 83.40 et seq., prior to enactment —

83.64. *Retaliatory conduct prohibited.* —

(1) A landlord may not retaliate against the tenant by increasing rent or decreasing services or by bringing or threatening to bring an action for possession or other civil action because the tenant in good faith, prior to notice of termination of the rental agreement, increase in rent or decrease in services has:

(a) complained to a governmental agency charged with responsibility for enforcement of a building, housing or health code of a violation applicable to the premises;

(b) complained to the landlord of a violation of the rental agreement or of any of the provisions of this part;

(c) complained to any governmental agency about an illegal or unauthorized increase in rent; or

(d) organized, encouraged, or participated in a tenant organization.

(2) If the landlord acts in violation of subsection (1), the tenant shall be entitled to the remedies provided in this part, and in addition may interpose a defense of retaliation in any action against him for possession, except as provided in subsection (3). The defense of retaliation is a defense to an action for possession.

(3) The tenant does not have a valid defense of retaliation if:

(a) the violation of the applicable building, housing or health code was caused primarily by the lack of due care by the tenant or other person in his household or upon the premises with his consent; or

(b) the tenant is in default in rent and has not interposed a defense of material noncompliance by the landlord with §83.51(1) ; or

(c) compliance with the applicable building, housing or health code requires alteration, re-modeling or demolition which would effectively deprive the tenant of use of the dwelling unit.

[On motions by Senator Weber the following amendments were adopted: Amendment 5 — On pages 13.15, lines 31, 32 on 13; 1-32 on 14; 1 on 15 strike all of 83.64 Retaliatory Conduct Prohibited.]

Defendant contends that §83.60 must be read in pari materia with the other sections of the Act, and when done, it becomes clear that the Florida Residential Landlord and Tenant Act was enacted to ameliorate the inequities which existed between landlords and tenants and that it imposes fundamental responsibilities on the landlord (§83.51) and upon the tenant (§83.52).

Defendant suggests that plaintiff's restrictive interpretation would emasculate the Act — by creating a gap in the landlord's responsibilities, it would allow the status quo ante and would result in a harsh and absurd consequence. It is the defendant's contention that the plaintiff's reading would suggest a devious legislative intent. Section 83.51 would be rendered ineffective as a protective measure; a landlord would be able to circumvent the expressed legislative prohibition against retaliatory eviction by simply alleging that a tenant is undesirable and thereafter giving the appropriate seven-day notice rather than following the procedure for removal for non-payment of rent. Plaintiff says that the former precludes a defense of retaliatory eviction while the statute expressly allows it in the latter situation.

Defendant further suggests that Rule 7.100(a), Rules of Summary Procedure, mandates the filing of a counterclaim in the same court in which the removal action is filed. The Supreme Court is constitutionally charged with the responsibility of establishing procedural rules, and in fact has done so for cases like the one at bar, and the defendant argues that the rules may not be impliedly abrogated by statute.

The leading case which discusses the availability of a defense against retaliatory eviction is Edwards v. Habib, 397 F.2d 687 (D.C. Cir. 1968), cert. den. (1969) 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560. In that matter, a tenant complained to District of Columbia housing officials about sanitation and housing code violations existing in her apartment, which her landlord had refused to repair, and the landlord responded with a notice to vacate the premises and obtained a default judgment for possession. The tenant then reopened the case and interjected as a defense that the notice to quit was served in retaliation for her complaints to the housing authorities. The defense was rejected as irrelevant at trial and on appeal to the district court. The circuit court reversed, ruling —

But while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted.

The housing and sanitary codes * * * indicate a strong and pervasive congressional concern to secure for the city's slum dwellers decent, or at least safe and sanitary, places to live. Effective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations. * * * To permit retaliatory evictions * * * would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing in Washington. * * * There can be no doubt that the slum dweller, even though his home be marred by housing code violations, will pause long before he complains of them if he fears eviction as a consequence. Hence an eviction under the circumstances of this case would not only punish appellant for making a complaint which she had a constitutional right to make, * * * but also would stand as a warning to others that they dare not be so bold, a result which, from the authorization of the housing code, we think Congress affirmatively sought to avoid.

The notion that the effectiveness of remedial legislation will be inhibited if those reporting violations of it can legally be intimidated is so fundamental that a presumption against the legality of such intimidation can be inferred as inherent in the legislation even if it is not expressed in the statute itself. * * * [W]e * * * have the task of reconciling and harmonizing two federal statutes so as to best effectuate the purposes of each. The proper balance can only be struck by interpreting [the District of Columbia eviction statutes] as inapplicable where the court's aid is invoked to effect an eviction in retaliation for reporting housing code violations. (Footnotes omitted.) (Id. at pp. 699-702.)

While District of Columbia circuit opinions are not controlling precedent in this court, the compulsion of persuasive reasoning is not circumscribed by jurisdictional boundaries. (See, e.g., W. J. Wilkins v. Tebbetts, 216 So.2d 477 (3d Fla. App. 1968), and Schweiger v. Superior Court of Alameda County, 476 P.2d 97 (Calif. Sup. Ct. 1970).

The *Edwards* court was faced with the problem of reconciling the apparently unlimited power of landlords to evict with the fundamental public policy underlying the housing and sanitation codes. The court held that landlords could not exercise their rights under the eviction statutes to retaliate against tenants invoking their rights under the housing and sanitation codes. This case poses a similar choice. If the court fails to recognize a reasonable limitation on the punitive power of a landlord to engage in retaliatory eviction, the salutary purposes sought to be achieved by the

legislature in enacting §§83.51 and 83.60 will be frustrated. If the court denies a tenant a defense against retaliatory eviction in a removal proceeding, it lends the exercise of the judicial process to aid landlords in punishing tenants who have had the temerity to demand a landlord fulfill his duty under the law. Thus sound statutory construction here — as *Edwards* held in comparable circumstances — requires that the court reconcile §§83.51 and 83.60 by recognizing the existance of a defense in a removal action where the landlord's motive is retaliation for the tenant's action of reporting a violation of §83.51, subsection 1 duties.

The court will not ascribe to the legislature an intent to create an absurd, harsh or devious consequence and, therefore rejects the contention that the legislature conferred rights on the tenant with one hand and simultaneously with the other hand stripped protection from the tenant who invoked those rights. Thomas v. State, 317 So.2d 450 (3d Fla. App. 1975).

With respect to defendant's motion to transfer the cause to the circuit court, this court has looked to the Fourth District Court of Appeal holding in Davis v. Flato, 210 So.2d 16, 18 (1968), wherein the court said —

> The rule [referring to Rule 1.13(j) now Rule 1.170(j), RCP, which is the counterpart to Rule 7.100(d), RSP] taken literally is mandatory rather than directional only. But the rule should not be given literal application in an anomalous situation where to do so would lead to impracticality. . . . *Another exception engrafted upon the rule pertaining to transfer of the cause of action is that such counterclaim will not act to divest the court of a specific statutory proceeding of which the original court has exclusive jurisdiction.* (Emphasis supplied.)

The source of the jurisdiction of the county court is found in Article V, §6(b) of the Florida Constitution (1968 Revision). "The county courts shall exercise the jurisdiction prescribed by general law." Florida Statute 34.001(2) states,

> The county court shall have exclusive jurisdition of proceedings relating to the right of possession of real property and to the forcible or unlawful detention of lands and tenements, except as provided in §26.012, Florida Statutes.

Thus it appears that this court's jurisdiction is exclusive in removal actions and that Rule 7.100(d) may not be employed to divest the court of its jurisdiction. *Davis v. Flato,* supra, and State ex rel. Attias v. Blanton, 195 So.2d 870 (3d Fla. App. 1967). Defendant's counterclaim, however, exceeds the jurisdiction of this court and accordingly must be severed and transferred to the circuit court. State ex rel. Attias v. Blanton, supra.

For the reasons heretofore stated and relying upon the authority set forth therein, it is ordered and adjudged that defendant's motion to transfer the cause to the circuit court is granted in part and to the extent that defendant's counterclaim is severed from this action, and due to the fact that the counterclaim exceeds the jurisdiction of this court and was filed by the defendant in forma pauperis, the counterclaim shall be transferred to the circuit court of the fifteenth judicial circuit, in and for Palm Beach County, and the fee for filing the counterclaim in the circuit court is waived.

It is further ordered and adjudged that defendant's motion to transfer the remainder of this cause to the circuit court of the fifteenth judicial circuit is denied.

It is further ordered and adjudged that plaintiff's motion to strike defendant's affirmative defenses and counterclaim is denied.

It is further ordered and adjudged that the clerk of this court set this action for trial before the court on Friday, January 30, 1976, at 8:30 A.M., in Room 423 of the County Courthouse at West Palm Beach.