Filed 9/3/13

## CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KEVIN BANUELOS, | B239123 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC023725) |
| v. | |
| LA INVESTMENT, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rose Hom, Judge. Reversed in part; affirmed in part.

Law Office of Spix & Martin, Richard L. Spix and D. Elizabeth Martin for Plaintiff and Appellant.

Law Offices of Douglas W. Beck & Associates and Douglas W. Beck for Defendants and Respondents.

_____

[*]   Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III and IV of the Discussion.

The trial court dismissed Kevin Banuelos's third amended complaint after sustaining the defendants' demurrer to all causes of action without leave to amend. We hold the complaint states a cause of action for retaliatory eviction under Civil Code section 1942.5 and that this cause of action is not barred by the litigation privilege of Civil Code section 47, subdivision (b). We affirm the judgment as to the remaining causes of action.

## FACTS AND PROCEEDINGS BELOW

Background: *Banuelos I*.

In 2008, Banuelos brought an action against the owners and managers of Park Granada, a mobile home park in Carson. Banuelos alleged that he was the owner of a mobile home located on Space 23 at Park Granada and that defendants refused to accept his application for tenancy of the space in violation of Civil Code section 798.74, which limits the right of a mobile home park owner to refuse tenancy to a "purchaser" of a mobile home in the park.[1] According to Banuelos's complaint, defendants refused to accept his rent applications for the space in order to force him to sell them his mobile home for little or no consideration since it would be practically impossible for him to move it from the space. Banuelos sued the defendants for violation of section 798.74 and various torts.

---

[1]  Statutory references are to the Civil Code unless otherwise noted. Section 798.74, subdivision (a) states in relevant part: "The management may require the right of prior approval of a purchaser of a mobilehome that will remain in the park and that the selling homeowner or his or her agent give notice of the sale to the management before the close of the sale. Approval cannot be withheld if the purchaser has the financial ability to pay the rent and charges of the park unless the management reasonably determines that, based on the purchaser's prior tenancies, he or she will not comply with the rules and regulations of the park . . . . If the approval of a prospective homeowner is withheld for any reason other than those stated in this article, the management or owner may be held liable for all damages proximately resulting therefrom."

The trial court granted the defendants' motion for summary judgment as to each cause of action and we affirmed the judgment in an unreported opinion (*Banuelos I*).**²** We held that Banuelos could not state a cause of action under section 798.74 for failure to approve his tenancy because he had received the mobile home as a gift and therefore he was not a "purchaser." Similarly, we held that he could not state a cause of action for negligence against the defendants because they owed him no duty under section 798.74. We further held that Banuelos could not state a cause of action for landlord retaliation under section 1942.5 because there was no landlord-tenant relationship between Banuelos and the park at the time of the alleged retaliatory actions.

Background: *Banuelos II.*

In May 2009 a new owner of Park Granada rejected Banuelos's application for tenancy. Notwithstanding that rejection, Banuelos tendered monthly space rental checks to the owner. The owner returned each check. In May 2010, Banuelos sent a check for $4,200 to the owner's attorney, accompanied by a letter stating that the check was for 14 months space rent commencing April 2009. The owner's attorney did not return this check but deposited it in his client trust account. The following month, however, the owner filed an unlawful detainer action against Banuelos seeking possession of Space 23. The case was tried to a jury, which returned a general verdict with special findings in favor of Banuelos. Banuelos maintains his tenancy commenced in May 2010 when defendants accepted his rent check.

---

**2**    *Banuelos v. Butler* (Dec. 22, 2010, B223120 [nonpub. opn.].)

Background: *Banuelos III*.

Prior to the verdict in *Banuelos II,* Banuelos filed this action against 218 Properties and LA Investment, LLC, which he alleged to be the joint owners of Park Granada. Banuelos also sued the managers of the property. The third amended complaint, filed in August 2011, following the verdict in *Banuelos II*, charges defendants with statutory and common law retaliation, bad faith, intentional and negligent interference with economic advantage and negligence. Defendants demurred to each count of the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The trial court sustained the demurrers without leave to amend and dismissed the action as to all defendants except 218 Properties, which had a pending cross-complaint against Banuelos.

Banuelos filed a timely appeal.

## DISCUSSION

### I. THE COMPLAINT STATES A CAUSE OF ACTION FOR RETALIATION UNDER SECTION 1942.5 BUT NOT UNDER THE COMMON LAW.

#### A. Retaliation Under Section 1942.5

Under section 1942.5 it is unlawful for a lessor to "bring an action" against a lessee to "recover possession . . . for the purpose of retaliating against the lessee because he or she . . . has lawfully and peaceably exercised any rights under the law."

In his first cause of action, Banuelos alleged that he was a tenant of Park Granada as of May 2010. Defendants served him with a five-day notice to vacate on or about June 1, 2010, and soon after filed an eviction action against him. He alleged that these acts violate section 1942.5 and the common law of California because they were done in retaliation for, among other things, complaining orally and in writing to the City of Carson and the courts about the defendants' alleged unlawful acts and omissions.

The complaint states a cause of action for retaliation under section 1942.5. Banuelos's right to complain to the city about defendants' alleged wrongful acts and to file a lawsuit are both protected under the law.

4

### B. Retaliation Under The Common Law

Banuelos cannot state a common law cause of action for retaliatory eviction because that cause of action applies only to conduct that causes the tenant to involuntarily vacate the premises. (*Glaser v. Meyers* (1982) 137 Cal.App.3d 770, 777.) Banuelos does not allege that he vacated Space 23.

## II. THE LITIGATION PRIVILEGE DOES NOT BAR BANUELOS'S SUIT UNDER SECTION 1942.5 FOR RETALIATORY EVICTION BASED ON THE DEFENDANTS' ACTION TO RECOVER POSSESSION OF THE PREMISES.

Section 1942.5, subdivision (c) creates a cause of action against a landlord who "bring[s] an action to recover possession . . . for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law." Subdivision (f) of the statute states, "Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following: [¶] (1) The actual damages sustained by the lessee. [¶] (2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act." The landlord can defend against an action for retaliatory eviction by showing that it acted for "any lawful cause" (§ 1942.5, subd. (d)) or "in good faith" (*id*., subd. (e)).[3]

---

[3]     The provisions of section 1942.5, subdivisions (c) through (g) state as follows: "(c) *It is unlawful for a lessor to* increase rent, decrease services, cause a lessee to quit involuntarily, *bring an action to recover possession*, or threaten to do any of those acts, *for the purpose of retaliating against the lessee* because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory. [¶] (d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his or her rights under any lease or agreement or any law pertaining to the hiring of property or

Tenants' protection from retaliation by their landlords for exercising their rights under California law developed simultaneously from legislation, section 1942.5, subdivision (a) (Stats. 1970, ch. 1280), and the decision by the California Supreme Court in *Schweiger v. Superior Court* (1970) 3 Cal.3d 507, 513 (*Schweiger*), as an affirmative defense to an eviction action.[4] *Schweiger* arose from a tenant's use of the "repair and deduct" remedy afforded him under sections 1941 and 1942 to repair two broken windows and a broken back door. The landlord retaliated against the tenant the next month by more than doubling the tenant's rent and, when the tenant failed to pay the increased amount, brought an unlawful detainer action to evict the tenant. In upholding the tenant's right to assert an equitable defense of retaliation to the landlord's eviction action, Justice Mosk stated that, "[i]f we fail to recognize a reasonable limitation on the punitive power of landlords to increase rents and evict tenants, the salutary purposes

---

his or her right to do any of the acts described in subdivision (a) or (c) *for any lawful cause. Any waiver by a lessee of his or her rights under this section is void as contrary to public policy.* [¶] (e) Notwithstanding subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states *the ground upon which the lessor, in good faith, seeks to recover possession,* increase rent, or do any of the other acts described in subdivision (a) or (c). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing. [¶] (f) *Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:* (1) The actual damages sustained by the lessee. (2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act. [¶] (g) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action." (Italics added.)

[4]    The petitioner in *Schweiger* was not covered by section 1942.5 because it did not apply to rental agreements entered into prior to the effective date of the statute, January 1, 1971. (*Schweiger, supra*, 3 Cal.3d at p. 510, fn. 1.) For the text of the original version of section 1942.5, see Note, *California's New Legislation On A Landlord's Duty To Repair* (1971) 3 U.C. Davis L.Rev. 131, 156.

sought to be achieved by the Legislature in enacting Civil Code sections 1941 and 1942 will be frustrated." (*Ibid.*)

Less than a year after the Supreme Court's decision in *Schweiger*, the same landlord was before the court in *Aweeka v. Bonds* (1971) 20 Cal.App.3d 278. Again the tenants petitioned the landlord to repair unsafe conditions in their apartment and again the landlord responded by raising the tenant's rent—this time from $75 a month to $145 a month. Instead of waiting to be sued in an unlawful detainer action, the tenants sued the landlord for retaliatory eviction claiming that the rent increase constituted an actual eviction and seeking an injunction to prevent the landlord from enforcing the rent increase or instituting an action for unlawful detainer. The trial court denied a preliminary injunction and sustained the landlord's demurrer to the complaint without leave to amend. Relying on *Schweiger*, the Court of Appeal reversed. The court reasoned: "We can discern no rational basis for allowing . . . a substantive defense while denying an affirmative cause of action. It would be unfair and unreasonable to require a tenant, subjected to a retaliatory rent increase by the landlord, to wait and raise the matter as a defense only, after he is confronted with an unlawful detainer action and a possible lien on his personal property . . . . Accordingly, we conclude on the authority of *Schweiger* that the complaint stated a cause of action for retaliatory eviction." (*Id.* at p. 281.) The Supreme Court denied review.

In 1979 the Legislature affirmed the right of a tenant to sue a landlord for retaliatory eviction by repealing and reenacting section 1942.5 (Stats. 1979, ch. 652). As part of that reenactment, the Legislature specifically provided that "[i]t shall be unlawful for a lessor to . . . bring an action to recover possession . . . for the purpose of retaliating against the lessee because he or she has . . . lawfully and peaceably exercised any rights under the law" and that "[a]ny lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action[.]" (§ 1942.5, subds. (c) & (f).)

Our Supreme Court has described section 1942.5 as reenacted in 1979 as "a remedial statute aimed at protecting tenants from certain types of abuses. It is to be

7

'liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed. [Citation.]'" (*Barela v. Superior Court* (1981) 30 Cal.3d 244, 251.)

In *Rich v. Schwab* (1998) 63 Cal.App.4th 803, 812, the appellate court held that the cause of action for retaliation recognized by section 1942.5 applies to tenants of a mobile home park. The court reasoned: "By their terms, subdivisions (c) and (f) of section 1942.5 give a right of action to any *lessee* who has been subjected to an act of unlawful retaliation. Thus, on its face the statute provides protection to mobilehome park tenants who own their own dwellings and merely rent space from their landlord."

Defendants maintain that insofar as section 1942.5 purports to allow a tenant to sue a landlord for "bring[ing] an action to recover possession" it is trumped by the "litigation privilege" provision of section 47, subdivision (b).

"The usual formulation" of the litigation privilege is that it "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege applies without regard to the defendant's "motives, morals, ethics or intent." (*Id*. at p. 220.)

Despite its broad scope, our high court has recognized that "the Legislature remains free to create exceptions to the litigation privilege[.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1247 (*Action Apartment*).) The question is whether the Legislature did so in enacting section 1942.5, subdivisions (c) and (f).

In *Action Apartment*, the Supreme Court considered a challenge under the litigation privilege to a city ordinance that penalized a landlord who brought an action to recover possession of a rental unit "without a reasonable factual or legal basis." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1239.) The Court held that this provision of the city ordinance was "inimical to the important purposes of the litigation privilege" including

8

"'afford[ing] litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'" (*Id.* at p. 1243.) Therefore, the litigation privilege "conflicts with and thus preempts" that portion of the city ordinance "regarding filing an action to recover possession of a rental unit." (*Id.* at p. 1237.)

The holding in *Action Apartment* is not controlling here because the conflict in that case was between a statute and a city ordinance while our case involves a conflict between two co-equal statutes. Nevertheless, much of the Court's analysis in *Action Apartment* is applicable to the case before us.

The Court began its analysis by noting that it has given the litigation privilege "a broad interpretation" in order to achieve its "'principal purpose'" to afford litigants and witnesses "'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'" (*Action Apartment*, *supra,* 41 Cal.4th at p. 1241.) Recognizing that invocation of the privilege "has its costs," the court observed that "'avoiding an unending roundelay of litigation [justifies] an occasional unfair result.' [Citation.]" (*Id.* at p. 1244.)

The Court acknowledged, however, that although the litigation privilege has been described as "absolute" the privilege "is not without limit" and cited the examples of private actions for malicious prosecution and government actions including criminal prosecutions and regulatory actions brought pursuant to state statutes. (*Action Apartment*, *supra*, 41 Cal.4th at pp. 1242, 1245; see also *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 330 [debt collector's unlawful conduct under the Rosenthal Fair Debt Collection Practices Act (§§ 1788, et seq.) is not shielded by the litigation privilege].) "[T]hese exceptions," the Court pointed out, "have all involved suits brought under state laws, each of which makes clear that the Legislature did not intend its enforcement to be barred by the litigation privilege." (*Action Apartment*, at p. 1245.)

The Legislature "makes clear" that it does not intend the enforcement of a statute to be barred by the litigation privilege when the statute "is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.) The cause of action for retaliatory eviction authorized by section 1942.5, subdivisions (c) and (f) meets both prongs of this test.[5]

Subdivision (c) of section 1942.5 specifically makes it "unlawful" for a lessor to "bring an action to recover possession" in retaliation for a tenant's exercise of "rights under the law." Subdivision (f) of the statute states that "[a]ny lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action[.]" Additionally, subdivision (e) gives the landlord a defense of "good faith" to an action under subdivision (c), which, if controverted by the lessee, "the lessor shall establish . . . at the trial or other hearing." The statute's reference to a landlord's liability "in a civil action" for bringing "an action to recover possession" in retaliation for a tenant's exercise of rights coupled with the provision recognizing a good faith defense "at the trial or other hearing" demonstrates that the Legislature intended to create a cause of action for retaliatory eviction that is not barred by the litigation privilege. If the litigation privilege trumped a suit for retaliatory eviction under section 1942.5 the privilege would "effectively immunize conduct that the [statute] prohibits" (*Komarova v. National Credit Acceptance, Inc.*, *supra,* 175 Cal.App.4th at p. 338) thereby encouraging, rather than suppressing, "'the mischief at which it was directed. [Citation.]'" (*Barela v. Superior Court*, *supra*, 30 Cal.3d at p. 251.)

Moreover, the right of tenants to be free from eviction actions brought by their landlords because the tenants "lawfully and peaceably exercised [their] rights under the law" (§ 1942.5, subd. (c)) would be "significantly or wholly inoperable if its enforcement

---

[5] The court in *Komarova v. National Credit Acceptance, Inc.*, *supra*, 175 Cal.App.4th at pp. 339-340 applied this same test in determining a debt collector's litigation activities that violated the Rosenthal Fair Debt Collection Practices Act (§§ 1788, et seq.) were not immunized by the litigation privilege.

were barred [by the litigation privilege]." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.)

The Legislature made the judgment that raising retaliation as a defense to an unlawful detainer action and a suit for malicious prosecution are not adequate remedies for retaliatory eviction. Section 1942.5, subdivision (h) states that "[t]he remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law."

Two court of appeal opinions, purporting to follow *Action Apartment*, have held that the litigation privilege bars a tenant from suing a landlord under section1942.5, subdivisions (c) and (f) for bringing a retaliatory action to recover possession. We decline to follow them.

In *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*), the landlord brought an unlawful detainer action against the tenants and the tenants cross-complained for retaliatory eviction under section 1942.5 based on the landlord's alleged violation of the city's rent control ordinances. The Court of Appeal held that the landlord's "filing of the unlawful detainer action clearly fell within the litigation privilege. The Supreme Court in [*Action Apartment*] held the litigation privilege of Civil Code section 47 preempted the provision of the Santa Monica tenant harassment ordinance that authorized civil and criminal penalties against a landlord bringing any action to recover possession of a rental unit without a reasonable factual or legal basis." (*Id*. at p. 1486.) The appellate court did not discuss the distinction between a tenant suing under a city ordinance, as in *Action Apartment*, and a tenant suing under the authority of a co-equal state statute, nor did it analyze section 1942.5 to determine whether it "makes clear" that it is not barred by the litigation privilege. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.)

In *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1213, the appellate court held that "as a matter of law" the tenant-plaintiffs had no cause of action under section 1942.5 "for wrongful eviction based on the unlawful detainer action or three-day

11

notice, in light of the litigation privilege of Civil Code section 47, subdivision (b)." Like *Feldman*, the court cited but did not discuss or analyze *Action Apartment* and the litigation privilege nor did it distinguish between a city ordinance and a state statute when resolving the conflict issue.

Defendants cite two Supreme Court opinions in which the court found that the plaintiffs' statutory causes of action were barred by the litigation privilege. Both opinions are distinguishable from our case.

In *Rubin v. Green* (1993) 4 Cal.4th 1187, residents of a mobile home park sent a written complaint to the owner listing 23 alleged defects in the operation of the park. The owner sued the park residents and their attorney for unfair business practices under the Business and Professions Code. The Supreme Court held the owner's suit was barred by the litigation privilege. *Rubin* involved a conflict between section 47, subdivision (b), the litigation privilege, which applies to any "publication or broadcast" made as part of a "judicial proceeding," and Business and Professions Code section 17200, which defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice."[6] The Court held that it would violate the principal purpose of the litigation privilege—to afford litigants utmost freedom of access to the courts—if the park owner were allowed to "plead around" the privilege by simply relabeling his common law suit for interference with contractual relations as a statutory suit for unfair competition. (*Id*. at pp. 1191, 1201-1203.) Permitting the owner's claim, the Court explained, "would upset the carefully constructed balance between 'the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation' [citation] by effectively destroying the availability of the privilege'" in any case in which a party to litigation was prompted to claim that his opponent was engaging in an unfair business practice. (*Id*. at pp. 1203-1204.) The Court concluded by

---

**6**      Business and Professions Code sections 17203 and 17204 authorize private actions for injunctive relief and damages for violation of section 17200.

12

noting its analysis "is reinforced by the fact that the policy underlying the unfair competition statute can be vindicated by multiple parties other than plaintiff" including the Attorney General, district attorneys and certain city attorneys. (*Id*. at p. 1204.)

*Rubin* was preceded by *Ribas v. Clark* (1985) 38 Cal.3d 355 in which the plaintiff sued a person who had admitted during an arbitration hearing that she eavesdropped on a telephone conversation between plaintiff and his former wife. Plaintiff based his suit, in part, on Penal Code section 637.2, which provides for a private cause of action by any person "injured" by another's violation of the Privacy Act, which prohibits eavesdropping, wiretapping and unauthorized recording of communications under a multitude of circumstances. (Pen. Code, §§ 630-637.9.) The defendant relied on the litigation privilege as her defense. The Supreme Court held the defense had merit. "[N]othing indicates that in enacting Penal Code section 637.2 the Legislature intended to immunize causes of action under that statute from the [litigation privilege]." (*Ribas*, at p. 365.) Thus, the Court concluded, to the extent the plaintiff's complaint alleges that he suffered injury solely as a result of the defendant's testimony at the arbitration hearing, it is barred by the litigation privilege. (*Ibid.*)

*Rubin* and *Ribas* both addressed statutes that cover a broad spectrum of conduct, none of which specifically relates to litigation. It was only because the facts that gave rise to the causes of action in those cases happened to involve litigation activities that the privilege was implicated. Neither statute "would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.) On the contrary, in *Rubin* the Court observed that the policy underlying the unfair competition statute could be vindicated by parties other than the plaintiff, including the Attorney General, district attorneys and certain city attorneys. (*Rubin v. Green*, *supra,* 4 Cal.4th at p. 1204.)

Section 1942.5, unlike the unfair competition and privacy statutes, specifically creates a cause of action for, among other things, bringing a certain kind of lawsuit. Subdivision (c) of section 1942.5 makes it "unlawful" for a lessor to "bring an action to

13

recover possession" in retaliation for a tenant's exercise of "rights under the law." Subdivision (f) of the statute states that "[a]ny lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action." The Legislature presumably would not have included these protections in section 1942.5 if it intended that they be nullified by the litigation privilege. We do not believe the Legislature intended to do a useless act.

## III. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR BAD FAITH.

The complaint alleges that "[d]efendants['] continuous actions from May 2009 through the present unfairly and in bad faith interfere with plaintiff's right to receive the benefits of residency in Park Granada." Defendants' actions include "delaying and discouraging [Banuelos's tenancy] applications in 2009; refusing to process his applications, in 2009, as required by law" and acquiescing in his occupancy and repairs of his mobile home, accepting his $4,200 rent payment and then serving him with an eviction notice.

A cause of action for bad faith cannot be based on defendants' delaying, discouraging or refusing to process Banuelos's 2009 application to rent Space 23. The protection against delay and denial of such applications contained in section 798.74 did not apply to Banuelos because he was not a "purchaser" of the mobile home until June 1, 2010.

Contrary to Banuelos's assertion there is no common law duty on the part of a lessor of residential property to act reasonably and in good faith in exercising its right to approve or disapprove the transfer of a leasehold. (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 492, fn. 1, 506-507.) Even if such a duty could be established (see Coskran, *Assignment And Sublease Restrictions: The Tribulations Of Leasehold Transfers* (1989) 22 Loyola L.A. L.Rev. 405, 480), it would not apply here because the lease of Space 23 was not transferable from the former lessee to Banuelos. Rather, a lessee's conveyance of title to a mobile home terminates the ground lease and requires a new lease between the new owner and the park. (§ 798.75, subd. (a).)

14

Banuelos alleges that defendants acted in bad faith when they stood by and allowed him to make improvements on his mobile home, then accepted his $4,200 rent payment, and later attempted to evict him. We need not decide whether defendants' conduct would otherwise give rise to a cause of action for bad faith because here Banuelos cannot show that he suffered any harm. The mobile home belongs to Banuelos so any improvements he made to it benefited him, not defendants. The $4,200 represents the amount Banuelos admits was the fair value of 14 months of rent and utilities for Space 23. The defendants' attempt to evict Banuelos failed, the court awarded him $95,000 in attorney fees and the judgment was affirmed on appeal. (*Banuelos II*.)

## IV. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR INTENTIONAL OR NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE.

Banuelos's causes of action for intentional and negligent interference with economic advantage suffer from the same defect. They fail to allege that Banuelos has an economic relationship with a potential buyer of his mobile home.

The first element in a claim of interference with prospective economic advantage is the existence of an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944.) Banuelos's complaint alleges that defendants are interfering with his ability to one day sell his mobile home to some unidentified buyer. This claim falls directly into the impermissible category of "'lost opportunity'" or "speculative expectation that a potentially beneficial relationship will eventually arise." (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 523-524.) Accordingly, Banuelos's failure to allege an economic relationship with a prospective buyer dooms his causes of action for intentional and negligent interference with economic advantage. (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 840-841 [no cause of action for wrongful interference with prospective economic advantage when plaintiff's business relationship was with a class of as yet unknown purchasers of lots in a subdivision].)

15

## V. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR NEGLIGENCE.

Banuelos alleges that the defendants "negligently refused to approve [p]laintiff's tenancy and negligently refuse to acknowledge the rightful tenancy created by defendants in favor of Banuelos for Space 23 in violation of Civil Code section 798.74 and the common law of the state of California." (Block capitals omitted.)

As we explained above the owners and managers of Park Granada had no statutory duty to Banuelos under section 798.74. Banuelos does not explain what common law duty defendants breached in refusing to acknowledge his "rightful tenancy" in Space 23.

## DISPOSITION

The judgment is reversed as to the cause of action for retaliatory eviction and affirmed as to the remaining causes of action. Each party shall bear its own costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION.


                                        ROTHSCHILD, J.
We concur:



        MALLANO, P. J.



        JOHNSON, J.


16